[No. 12393.   Department Two.   March 22, 1915.]

THE STATE OF WASHINGTON, *on the Relation of the Board of State Land Commissioners, et al., Appellants,* v. OLIVER C. McGILVRA *et al., Respondents.*[1]

PUBLIC LANDS—SHORE LANDS—PREFERENCE PRIVILEGES — APPEAL— CANCELLATION—STATUTES. The "cancellation act" of 1899 (Rem. & Bal. Code, §§ 6751-6753), providing for the withdrawal and cancellation of preference rights to purchase "tide lands" of the first class, and authorizing the dismissal of appeals taken from the board of state land commissioners in which no trial has been had for a period exceeding two years, applies also to, and is incorporated into the "shore land act" of 1907, Laws 1907, p. 4 *et seq.,* providing for the disposition of "shore lands" on Lakes Washington and Union, with a preference right of purchase to abutting owners "under existing laws," in view of the constant reiteration of the last quoted words, and § 5 of the act (Laws 1907, p. 6), wherein it is declared that "the provisions of any existing law of this state relating to the selection, survey . . . and disposition of the state's granted, school, tide, oyster and other lands or harbor areas, or any other law of this state applicable thereto, shall control and govern," the sale and disposition of the shore lands covered by the act, except as modified by the provisions of the act; there being no provision in the "shore land act" itself for the cancellation of preference rights or the dismissal of appeals in proceedings thereunder, except as the act incorporates "existing laws."

PUBLIC LANDS—SHORE LANDS—PREFERENCE PRIVILEGES — APPEAL— CANCELLATION — TOLLING STATUTE. The statutory withdrawal and concellation of preference privileges to purchase tide lands, for delay in prosecuting appeals from the board of state land commissioners, declared by Rem. & Bal. Code, § 6751, and the authority to the At-

[1]Reported in 147 Pac. 40.

torney General given by Id., § 6752, to move the dismissal of such appeals, cannot be abrogated or suspended by independent litigation touching such shore lands nor by any agreement of the state land commissioner to allow the appeals to rest *in statu quo*.

Appeal from orders of the superior court for King county, Gilliam, J., entered May 20, 1914, denying motions to cancel and withdraw preference privileges to purchase shore lands and to dismiss appeals from orders of the board of state land commissioners relating thereto.    Reversed.

*The Attorney General* and *R. E. Campbell, Assistant,* for appellants.    .

*E. M. Farmer* and *Oliver C. McGilvra,* for respondents.

ELLIS, J.—These are appeals prosecuted on behalf of the state of Washington and the board of state land commissioners from orders of the superior court of King county, denying motions made by the *Attorney General,* on behalf of the state, to cancel and withdraw certain preference privileges to purchase shore lands, and to dismiss appeals to the superior court from certain orders of the board touching such preference privileges.

The facts, so far as material, are these.    On March 21, 1908, the board of state land commissioners, the board of state tax commissioners and the *Attorney General,* pursuant to the provisions of chapter 3, Laws of 1907, p. 4, filed an appraisal of the shore lands bordering lakes Washington and Union, in King county, as provided in that act.    On April 9 and 10, 1908, separate applications to purchase certain of these shore lands were filed with the commissioner of public lands by the respondents here.    These applications conflicted with one another in that the applicants had applied for, and claimed the preference right to purchase, certain of the shore lands that were included in other applications filed in accordance with chapter 3, Laws of 1907, p. 4.    In view of these conflicts, the applicants were required by the board of state land commissioners to furnish proof of their ownership of the

uplands in front of the lands which they had so applied to purchase. The proofs submitted were held sufficient to support preference purchase rights to only a part of the lands included in the several applications. The board therefore, on December 24, 1908, entered an order awarding to the several applicants the right to purchase the shore lands in front of and adjoining the uplands owned by them as shown by the written proofs submitted, but in each instance excluding a part of the shore lands applied for. All of the applicants appealed to the superior court of King county from this order, excepting as to two of the applications, with which we are not concerned. The appeals were from that part of the order rejecting the applications as to part of the lands and awarding the right to purchase such lands to other applicants. The notices of appeal and appeal bonds were filed in the office of the commissioners of public lands on January 22, 1909.

Upon the filing of these notices and bonds and stipulations for consolidation, transcripts of the proceedings before the state land commissioners were prepared in accordance with the stipulations, and forwarded to the clerk of the superior court for King county on February 20, 1909, for filing. By letter addressed to Oliver C. McGilvra, one of the applicants, who was then and is now acting as one of their attorneys, the applicants were advised of the making, preparation and forwarding to the clerk of these transcripts for filing. On June 30, 1909, Mr. McGilvra paid to the land commissioners the cost of the preparation of the transcripts and acknowledged receipt of the notices of the forwarding of the transcripts to the clerk of the superior court. The transcripts, however, were not filed until December 6, 1911. They constitute the two cases involved in this appeal. On January 20, 1914, no trials or other proceedings than those above mentioned having been had or taken, the *Attorney General*, on behalf of the state of Washington and the board of state land commissioners, served upon the applicants, respondents here, motions

to dismiss the appeals to the superior court, and for cancellation and withdrawal of the preference privileges claimed by the applicants. At the same time, thirty days' notice of the intention of the state to enforce such withdrawal and cancellation was served upon the attorney for the applicants. These motions were regularly brought on for hearing before the superior court for King county, and on May 20, 1914, orders denying the motions and refusing to cancel and withdraw the preference privileges to purchase, claimed by the applicants, were signed and entered. These appeals followed. They come to this court by agreement as one consolidated cause.

The sole question presented is this, do the provisions of §§ 6751 to 6753, inclusive, Rem. & Bal. Code (P. C. 477 §§ 177, 179, 181), touching dismissal of appeals and cancellation of preference privileges of purchase relating to tide lands of the first class, which for convenience we shall designate as the "cancellation act," apply also to appeals involving preference privileges to purchase shore lands of the first class, as accorded by chapter 3, Laws of 1907, p. 4, which we shall designate as the "shore land act."

The cancellation act declares:

"In all cases involving the prior privilege of purchase of tide lands of the first class, wherein appeals have been or shall be taken from any decision of the board of state land commissioners to the superior court and in which no trial has been or shall be had in said superior court for a period of time exceeding two years after the date of the taking of such appeal, the preference privilege of purchase given to the abutting upland owners and to improvers of such tide lands, shall be and the same is hereby declared to be withdrawn and canceled: *Provided, however,* That before any such withdrawal or cancellation shall take place or effect as to any tide lands involved in any such appeal now pending a notice of ninety days shall be given to all parties to the appeal by the attorney general on behalf of the state of the intention of the state to enforce such withdrawal and cancellation." Id., § 6751.

"The attorney general of the state is authorized and directed to enter on behalf of the state, motions of dismissal in all such appeals now pending or hereafter to be prosecuted: *Provided, however,* That as to appeals hereafter taken thirty days' notice shall be given by the attorney general to the parties to such appeal of the intention of the state to enforce such withdrawal and cancellation." Id., § 6752.

"All lands so withdrawn shall be re-appraised and sold in the manner prescribed by law for the appraisement and sale of unapplied-for tide lands of the first class." Id., § 6753.

The shore land act relates to the disposition of shore lands of the first class on lakes Washington and Union, in King county. Section 1 provides for the survey, appraisal and platting of such shore lands. Section 2, according preference privileges of purchase, reads as follows:

"Within twenty (20) days following the filing of the final appraisal of said shore lands with the commissioner of public lands, the owner or owners of lands abutting or fronting upon said shore lands, and all other persons, firms. or corporations having the preference right of purchase, as provided by any existing law of this state, may apply for the purchase of said shore lands in the mode and manner required or authorized by any existing law of this state, except as modified or amended by the provision of this act. Such application shall be in writing and filed within said twenty (20) days, and if at the end of said twenty days there shall be no conflicting applications filed, the applicant shall be deemed to have the right of purchase. And if at the expiration of said twenty days two or more applications shall have been filed for any tract conflicting with each other, such proceedings shall be had as is authorized or required by any existing law, except as may be changed by this act: *Provided, however,* that in case of contest, interest shall be charged upon the appraised value at the rate prescribed by law from the date of the expiration of said twenty day period, and such interest shall be paid at the time the first installment of principal is made, and no contract shall issue unless such interest be paid. Any of said shore lands remaining unsold and where there is no pending application for the purchase of the same, shall be sold in the same manner as provided by law for the sale of school and granted lands." Laws 1907, p. 5, § 2.

The repeated use of the words "any existing law," without any limitation to laws relating to shore lands *eo nomine*, found in this section, was manifestly intended as an adoption of any provision in the existing body of the law applicable to the appraisal, sale, preference rights of purchase, and contests touching state lands, including tide lands, where different or modified provisions are not found in the shore land act itself. This conclusion is made inevitable by § 5 of the shore land act which declares:

"The provisions of any existing law of this state relating to the selection, survey, management, reclamation, lease and disposition of the state's granted, school, tide, oyster and other lands or harbor areas, or any other law of this state applicable thereto, shall control and govern the establishment of the harbor lines, survey, platting, appraisal, sale and disposition of the shore lands mentioned in this act, except as modified, altered or repealed by the provisions of this act." Laws 1907, p. 6, § 5.

At the time this shore land act was passed, the cancellation act embodied in §§ 6751 to 6753, *supra*, was an existing law. By its terms that law only applies to cases involving preference privileges of purchase of *tide lands* of the first class. No cognate matter or modified provision controlling the withdrawal and cancellation as contained in this section is found in the shore land act. If, therefore, the declaration of § 5 of the shore land act is not a sufficient adoption of the cancellation act, then it is not sufficient to adopt any provision of any then existing law relating to tide lands, though it expressly mentions any existing law relating to the management and disposition of tide lands. To hold that § 5 does not adopt the cancellation act would nullify the explicit declaration of § 5 and make it an adoption of no existing law touching tide lands unless such law also expressly included shore lands, in which case the adoption would be a mere superfluity.

It is clear that, if the shore lands here involved were tide lands of the first class, the preference privilege claimed by

the respondents would be forfeited and the court would neces-
sarily have decreed their cancellation and withdrawal and
the dismissal of the appeals to the superior court. These
appeals were taken on January 22, 1909, approximately five
years before the motions to dismiss and applications for can-
cellation, thus clearly falling within the limitation expressed
in the cancellation act touching tide lands of the first class.
If, therefore, the provisions of the cancellation act relating
to the management and disposition of the state's tide or other
lands are, by the shore land act, incorporated into and made
a part of that act, it follows, also, of necessity, that the court
should have decreed the cancellation and withdrawal of the
preference privileges here involved and ordered the dismissal
of the appeals. There is not a single provision in chapter 3,
Laws of 1907, p. 4, the shore land act, which either expressly
or impliedly negatives the intention expressed in § 5 to adopt
the cancellation act as an existing law to govern and control
the termination of preference privileges asserted under the
shore land act. On the contrary, the shore land act, taken as
a whole, evinces the clear intention of the legislature to afford
every means offered by any existing law for a speedy disposi-
tion of these lake shore lands. A review of the provisions of
the shore land act itself shows this speedy disposition one of
its dominant purposes. The act shows, first, a shortening of
the period within which applications to purchase by prefer-
ence claimants must be filed from thirty to twenty days;
second; that preference privilege claimants are required to
pay interest on the original appraised value of these shore
lands from the filing of their applications to the date of com-
pletion of purchase; third, that the proceeds from the sales of
these lake shore lands are to be placed in a special fund known
as the Alaska-Yukon-Pacific Exposition fund. By subsequent
chapters of the laws of 1907 (pp. 7-11), appropriations are
made from this special fund. We have recently sustained the
right of the board to reappraise these shore lands. *Bouckaert
v. State Board of Land Com'rs, ante* p. 356, 146 Pac. 848.

But the legislative intention, evidenced by these provisions to facilitate the speedy disposition of these shore lands, would be balked for lack of coercive power and procedure unless the provisions of the cancellation act are construed as made a part of the shore land act by the broad terms of adoption of "any existing law," found in §§ 2 and 5 of the latter act.

No provision is made in the shore land act for appeals to the superior court in contests involving preference privileges of purchase, other than the broad declaration above quoted that all existing laws relating to the management, sale and disposition of the state's lands, enumerating certain classes and expressly including tide lands but not shore lands *eo nomine* "or any other laws of this state applicable thereto," shall control and govern the appraisal, sale and disposition of shore lands. Obviously the power to dismiss a halting appeal and to cancel and withdraw the preference right of purchase, pending for years uncompleted by payment, is essential to any disposition of the state's shore lands, speedy or otherwise, just as it is to the disposition of the tide lands of the first class. We are constrained to hold, not only by the clearly apparent purpose of the act, to be gathered from all of its terms, but also by the express declaration contained in §§ 2 and 5 thereof, that the shore land act has adopted the earlier cancellation act as an integral part of its own provisions and procedure.

We find no merit in the argument that the act of 1901, Laws of 1901, p. 98 *et seq.* (Rem. & Bal. Code, § 6616 *et seq.*), covering the subject of appeals from the board of state land commissioners, was all that was adopted by § 5 of the shore land act, in that the act of 1901 referred to shore lands as well as to tide lands. The act of 1901 expressly saved from its general repealing clause (section 9) the provisions of the cancellation act of 1899, p. 120 (Rem. & Bal. Code, §§ 6751 to 6753 inclusive). It left that act still in full force as to tide lands of the first class. Since § 5 of the shore land act adopts the provision of *any* existing law relating to tide

lands, it just as clearly adopts the act of 1899 as it does the act of 1901, even more clearly in fact, since the act of 1901, which specifically mentions shore lands, would apply without any adoption in the shore land act of 1907.

Nor do we find any merit in the claim that the words "applicable thereto" in § 5 limits the adoption of existing laws to those expressly mentioning shore lands. It means just what it says, "any existing law . . . relating to the . . . management . . . and disposition of . . . tide . . . and other lands . . . or any other law of this state applicable thereto." The words "applicable thereto" relate to the classes of lands enumerated. They could not relate to shore lands and exclude tide lands, since shore lands are not specifically mentioned, while tide lands are.

The claim that the delay in prosecuting these appeals in the superior court of King county was due to certain independent litigation in the Federal courts touching these shore lands, pending which the former state land commissioner agreed to allow the appeals to the superior court to rest in *statu quo*, does not aid the respondents. The cancellation act, which we have found was adopted in and made a part of the shore land act, not only authorizes but directs the *Attorney General* "to enter, on behalf of the state, motions of dismissal in all such appeals now pending or hereafter to be prosecuted," when not brought to trial "for a period of time exceeding two years after the date of the taking of such appeal;" and § 6751 expressly declares the withdrawal and cancellation in such cases. No independent litigation touching such shore lands, nor any mere understanding with the state land commissioner, can be held sufficient to abrogate or suspend the direct command thus laid upon the *Attorney General* acting on behalf of the state, nor to postpone the direct statutory withdrawal and cancellation. If such considerations were sufficient to toll the positive limitation contained in § 6751, then almost any excuse would enable the preference

privilege claimant to file his appeal and let it stand indefinitely, speculating on an advance in value of the shore lands, risking nothing but interest on the original appraised value. In the absence of legislative enactment to that effect, we can read no such exception into the law.

The order of the lower court is reversed, and the cause is remanded for dismissal of the appeals of the respondents pending in the superior court and a cancellation and withdrawal of the preference privileges asserted.

MORRIS, C. J., FULLERTON, CROW, and MAIN, JJ., concur.